UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | No. 22-mj-271 and 272 (RMM) |
| | : | |
| v. | : | |
| | : | |
| TREVOR WRIGHT, | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that Defendant be detained pending trial. The government seeks Defendant's detention pursuant to 18 U.S.C. §§ 3142(f)(1)(E) (a felony involving a firearm that is not a crime of violence) and (f)(2)(A) (risk of flight).

## FACTUAL AND PROCEDURAL BACKGROUND

*A. May 27, 2021, Machinegun Shooting in Miami*

On May 28, 2021, Defendant posted a story to his public Instagram account (depicted below) that showed him shooting a fully automatic rifle at Lock & Loaded Miami: Machinegun Experience & Range, located at 2545 North Miami Avenue, Miami, Florida.  This shooting range specializes in machinegun rentals.  Law enforcement visited Locked and Loaded and reviewed the surveillance footage and copies of the contract signed by Defendant prior to his use of the firearm at the range. A review of the surveillance shows Defendant and another individual learning to shoot and load the weapon from one of the range's instructors before Defendant ultimately shoots the firearm.



B. *July 17, 2022 Firearm Recoveries in D.C.*

On July 17, 2022, at approximately 2:14 a.m., Metropolitan Police Department ("MPD") officers responded to the 1700 block of Rhode Island Avenue, NW, in Washington, D.C., for a report of firearms left behind in a rideshare vehicle. Upon their arrival, Reporting Party 1 (hereinafter, "RP1"), a Lyft driver, reported finding numerous weapons in ITs vehicle ("Subject Vehicle 1") that had been left behind by Lyft passengers. Subject Vehicle 1, a black Chevrolet Suburban with three rows, is registered to RP1. The second row of the Suburban has what are commonly referred to as "captain's chairs," with an open aisle area between them. In the aisle area between the captain's chairs of the second row, officers recovered a pistol laying in plain view on the floor and an AR-15-style firearm that was partially concealed inside a duffle bag (the

"Subject Bag"), also laying on the floor between the captain's chairs.



Following several interviews with RP1, law enforcement learned that on July 16, 2022, at approximately 17:35 hours, Defendant sent RP1 a Lyft request, using the Lyft account named, "Stacie". Pursuant to that request, RP1 picked up approximately 3-4 males, including Defendant, from 515 15th Street, NW. During his initial encounter with RP1, Defendant told RP1 that he is a famous singer and had lots of money.

Defendant carried the Subject Bag with him into the Subject Vehicle at the pickup point. RP1 intended to open the trunk of Subject Vehicle 1 to help Defendant place the Subject Bag therein, but Defendant declined, stating that the bag stays with him. Defendant cancelled the ride on the Lyft app before they left the pickup point, instead offering RP1 cash up-front to drive him and his associates around for the night. Over the next several hours, Defendant communicated to RP1 primarily by texting RP1, and instructed RP1 to drive them to various locations in Maryland and Washington, D.C.

RP1 advised that at each stop, Defendant and the other males would get out of the car, but

3

one male would remain in the car, seated behind RP1 to ensure that RP1 did not unbuckle ITs seatbelt or leave the vehicle. RP1 further advised that at one of the stops at 8807 East Fort Foote Terrace, Fort Washington, MD 20744, prior to Defendant and the other males getting out of the car, RP1 heard from inside the vehicle a sound consistent with someone racking the slide of a firearm. RP1 recounted that at either the 11501 William Beanes Road stop or the 8807 East Fort Foote Terrace stop, when Defendant and the other males got back into the car, they rushed into the car in a hurry and yelled at RP1, "Go! Go! Go!" or words to that effect. From that point onwards, RP1 observed a noticeable change in Defendant's and his associates' demeanor – they became hostile towards him, angry about how slowly he was driving, and expressed an interest in taking over the vehicle themselves to drive it away from the last location.

After dropping the passengers off at the final destination, St. Yves Nightclub, RP1 started to move ITs vehicle due to the congestion on the road, but RP1 received a phone call from one of the other passengers/suspects, who told RP1 to stop moving the car and to stay put. RP1 believed that this unknown individual had not previously been inside the vehicle through the duration of the night, but possibly had been provided RP1's phone number by Defendant. The caller then opened RP1's car door, entered the vehicle through a rear door, retrieved something unknown, and then left soon thereafter. After dropping off the passengers at the last stop, RP1 looked at the rear of ITs car and noticed a firearm in plain view immediately behind the Subject Bag, and upon looking quickly in the Subject Bag and seeing a larger firearm therein, RP1 called the police at approximately 2:14 a.m.

Upon officers' response, they recovered inside the Subject Bag an AR-15-style weapon (depicted below) made of an Aero Precision X15 lower (S/N: X138274) and a LWRC M6A2 5.56mm upper (S/N: U07-00160). The firearm had twenty-nine rounds of .223 caliber ammunition

4

in the 45-round capacity magazine, which was inserted into the magazine well of the weapon, and zero rounds in the chamber. The weapon appeared to be functional and operable and capable of expelling a bullet or other projectile by means of an explosion. This rifle had been reported stolen out of Arlington County.



Behind the bag was a "ghost gun" – a black 9mm Glock semi-automatic pistol with an obliterated serial number on the Glock receiver and no serial number on the slide. The Glock had one round of 9mm ammunition in the chamber and thirty-one rounds in the 31-round high-capacity magazine, which was inserted into the magazine well. The weapon appeared to be functional and operable and capable of expelling a bullet or other projectile by means of an explosion and could be fired with one hand.



An additional handgun was recovered in the pocket mounted on the rear of the front passenger seat: a Ruger-57 5.7x28mm semi-automatic handgun (S/N: 642-18752) with one round in the chamber and sixteen rounds of 5.7x28mm ammunition in the twenty-round capacity magazine.

Law enforcement collected surveillance from the pickup location, 515 15th Street, NW, that shows Defendant holding the Subject Bag minutes before entering Subject Vehicle 1 (with the Bag still in hand) on July 16, 2022.[1]



Suspect 1


According to RP1, from the time Defendant entered Subject Vehicle 1 with the Subject Bag, and throughout the several hours that Defendant rode in the vehicle with RP1, the Subject Bag remained in the car between the captain's chairs by Defendant.

Defendant possessed the firearms recovered on July 17, 2022, notwithstanding having pled

---

[1] It should be noted the timestamps on security footage are approximately twenty to twenty-five minutes ahead of the actual time.

guilty on February 10, 2011, in Prince George's County, Maryland (Court Case number T101020C) to Attempt Robbery, a crime punishable by imprisonment for a term exceeding one year.  He had also previously pled guilty in Prince George's County (Court Case number CT160086X) on January 4, 2017, to two counts of "Possession of Controlled Dangerous Substances (5-601)", each of which is punishable by imprisonment for a term exceeding one year.

    C.  *November 11, 2022 Firearm Recoveries in D.C.*

Undeterred by the July 17, 2022 incident, Defendant again possessed a number of firearms in Washington, D.C. on November 11, 2022.  That day, he flew from Miami to D.C.  In the evening, law enforcement observed Defendant entering St. Yves' nightclub.  He ultimately left the club around 3:00 a.m. in a black Chevrolet Suburban ("Subject Vehicle 2"), where law enforcement noted that he occupied the passenger's-side captain's chair.  Aside from the driver, one female and two other males were in the car with Defendant.  A traffic stop was conducted around 3:11 a.m., in front of 810 7th Street, NW.  During that stop, the female occupant said that she needed to use the restroom, exiting Subject Vehicle 2, and prompting the other occupants, including Defendant, to exit of their own volition, too.  Almost immediately after stepping out of Subject Vehicle 2, Defendant fled from the scene and ultimately hid from officers in the Chinatown metro station.  He later got into a black 2017-2019 Toyota Highlander that appeared to ultimately drop him off at the InterContinental hotel.

Officers recovered from Subject Vehicle 2 five different firearms, two of which were equipped with extended magazines, in a perimeter surrounding where Defendant had sat in the vehicle.  Under his seat were two firearms – a 9mm Glock 19 (S/N ACSZ325) with fifteen live rounds in the magazine and one in the chamber; and a 10 mm Glock 29 (S/N BCNT225), also with fifteen live rounds in the magazine and one in the chamber.  In front of Defendant's seat was a 357

7

Glock 31 (S/N BEXR714) with an extended magazine containing twenty-two live rounds and one round in the chamber. To his left, was a backpack containing a Zastava AK-Style pistol (S/N M85PV003177), shown below, with an extended magazine holding 30 rounds of .556 caliber live rounds, and one in the chamber.



Under the driver's seat was a 9mm Glock 26 (S/N YVH326) with 15 live rounds of 9mm ammunition in the magazine and one in the chamber. All of the firearms appeared capable of expelling a bullet or other projectile by means of an explosion, and none were registered to any of the occupants of Subject Vehicle 2.

Following Defendant's flight, a US Secret Service ("USSS") lieutenant circulated an email with an image of Defendant, and USSS Officer Vesey recognized the Defendant as the same individual he had seen in the passenger's-side captain's chair. USSS Officer Sassin, who also viewed Defendant seated in the same spot in Subject Vehicle 2, separately identified the individual whose image was circulated by email as the same person seated in the passenger's-side captain's

chair who had fled.

Surveillance cameras from the same incident date show Defendant entering Subject Vehicle 2 from the Intercontinental Hotel, wearing clothing consistent with what he is seen wearing when entering the club and what he is depicted wearing on body-worn camera from the stop. On November 12, 2022, law enforcement observed the below picture posted on Defendant's Instagram story. Defendant appears to be in the same clothing as on the night of November 11, 2022, inside St. Yves nightclub.



D. *December 12, 2022, Arrest in D.C. and Procedural History*

On December 12, 2022, Defendant was once again present in D.C. at the St. Yves nightclub. Law enforcement observed Defendant leave the club with an entourage, enter a black Cadillac Escalade, and take off. Officers conducted a traffic stop and Defendant was arrested pursuant to the Southern District of Florida indictment and warrant. A search incident to arrest of Defendant recovered, among other things, over $17,000 in US currency, diamond earrings, and an Oyster Perpetual Rolex watch.

9

On December 12, 2022, Defendant was charged by Complaint with a single count of 18 U.S.C. § 922(g) for his unlawful possession of at least two firearms on July 17, 2022. At his initial appearance that same day, and pursuant to the government's request for detention under 18 U.S.C. §§ 3142(f)(1)(E) and (f)(2)(A), the Court scheduled a December 15, 2022 detention hearing.

The government is prepared to proceed to argument, by way of proffer, at the detention hearing.  Pursuant to the facts, circumstances, and authorities presented herein and at the detention hearing, the Defendant should be detained.

## LEGAL STANDARD

The Bail Reform Act requires pretrial detention where a court finds "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §§ 3142(e), (f). In making that determination, a court must consider "(1) the nature and circumstances of the offense charged . . . (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *Id*. § 3142(g).

The government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community and by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight—even where it is presumed that those standards are satisfied. *See United States v. Thomas*, No. 21-cr-724, 2022 WL 203083 at *2 (D.D.C. Jan. 24, 2022) (Cooper, J.) (citing *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987)).

## ARGUMENT

The government respectfully submits that there is no condition or combination of

conditions that would assure the safety of the community and Defendant's return to court.

## I. Nature and Circumstances of the Offenses Charged

The nature and circumstances of the charged offense weigh in favor of detention. In Miami, Defendant, while still on probation, shot a fully automatic firearm. While this incident in isolation occurred in a controlled environment, that is, a gun range, Defendant's affinity for firearms is sadly not constricted by the boundaries of any range. Defendant, a convicted felon, was out in the community in D.C. with multiple firearms on July 17, 2022. These firearms included a privately-manufactured firearm ("PMF"), or ghost gun, as well as an assault rifle, both of which were equipped with extended magazines full to the brim. Any one of those factors – being a felon in possession of a firearm, possession of an untraceable ghost gun, and possession of the extended magazines – would be concerning, but all are present in this case. Other aspects of this case further heighten that concern and demonstrate Defendant's disregard for the law. RP1's account of hearing what sounded like the racking of a firearm slide suggests that at least some of the firearms in Subject Vehicle 1 were not simply collecting dust on July 16 and 17, 2022.

## II. The Weight of the Evidence

The second factor the Court considers, the strength of the evidence, also supports detention. In regard to the Miami offense, Defendant is plainly captured on video shooting the machinegun, he posted video of himself on his own Instagram account firing the weapon, and he signed a contract at the location prior to shooting the weapon.

The Defendant's involvement in the July 17, 2022, incident in D.C. culminating in the recovery of firearms in Subject Vehicle 1 is supported by Lyft records that corroborate RP1 as well as phone records that show Defendant communicating with RP1 throughout July 16 and 17 when instructing RP1 to make various stops throughout Maryland and D.C. Surveillance clearly

11

shows Defendant with the duffle bag that ultimately was discovered to contain the rifle, both before and while entering Subject Vehicle 1.

The image of Defendant from that surveillance was circulated as "Suspect 1" in a lookout flier on July 21, 2022. That same day, MPD Officer M. Matthews identified "Suspect 1" via Defendant's Instagram account, as "@talibanglizzy." The officer advised that he grew up in the D.C. Metropolitan area and was familiar with many of the local musicians, to include Defendant. Also on the same date, after viewing the lookout flier, MPD Officer J. Petty identified "Suspect 1" above as Instagram user "@talibanglizzy." MPD Officer J. Rimel viewed the lookout flier and the Instagram account "@talibanglizzy." Officer J. Rimel then searched the name "Taliban Glizzy" in the MPD records management system and observed that "Taliban Glizzy" is the nickname for Trevor Wright, a black male with a date of birth of June 6, 1991, and PDID 596540, *i.e.*, the Defendant. Officer J. Rimel compared the lookout flier images, the mugshot photograph of Trevor Wright, the Instagram images, and observed that they are all of the same person.

What's more, on July 17, 2022, Defendant had posted on his Instagram account an image of himself appearing to wear the same outfit worn on the incident date. See below for a comparison of the surveillance image of "Suspect 1" (left) to the image of Defendant as posted on his Instagram account (right).




Suspect 1

Moreover, the rifle and ghost gun were recovered in Subject Vehicle 1 near where Defendant sat in the Subject Vehicle according to both surveillance showing him entering the car, and according to RP1, who had noted that Defendant insisted on keeping the Subject Bag with him as opposed to having it placed in the trunk of the Vehicle.

### III.   Defendant's History and Characteristics

This factor weighs heavily in favor of pretrial detention given Defendant's criminal history and pattern of conduct involving the unlawful possession of firearms.

Of note, Defendant pled guilty on or about February 10, 2011, to Attempted Robbery in Prince George's County, Maryland. According to Defendant's pretrial services report ("PSR"), during supervision in that matter, he had failed to appear for a probation violation hearing, resulting in the issuance of a bench warrant.

Not only that, but he picked up his next offense, a possession of a controlled substances conviction out of Prince George's County, Maryland, while still on probation for his Attempted Robbery conviction. According to the PSR, the defendant's Attempted Robbery probation expired in May 2020, but he was arrested for his controlled substances act offense in 2015, pled to it in 2017 (for which he received approximately one year in jail and three years of suspended time) with probation expiring in September 2021. Once again, Defendant committed his next offense while on probation. On May 27, 2021, Defendant fired a machine gun at a Miami gun range, resulting in him being charged by indictment with 18 U.S.C. § 922g in the Southern District of Florida, which is one of the cases before the Court for this Defendant.

As a result, the Defendant is now before the Court with a demonstrated history of noncompliance, and indeed, sheer disregard for any amount of court supervision. In fact, it does not appear that the Defendant has _ever_ completed any court-ordered probation successfully. His lack of compliance with supervision additionally poses a demonstrated flight risk. As noted above, Defendant fled successfully from the police on November 11, 2022. Coupled with the Defendant's substantial financial reserves (given law enforcement's seizure from Defendant of over $17,000, diamond earrings, and a Rolex), which would empower him with the means to leave D.C. for Miami or elsewhere, the Court can have no confidence that Defendant would comply with less restrictive conditions or combinations thereof. He has already shown the contrary time and time again.

Beyond what's reflected in his PSR, Defendant's history tells the Court that July 17, 2022, was not the first time that Defendant surrounded himself with multiple firearms, nor would it be the last if released. Law enforcement is aware of an incident on June 6, 2020, involving Defendant and his child's mother leaving a backpack containing a stolen Glock 23 firearm (with an extended

magazine carrying 22 rounds) and $80,030 inside of the women's bathroom of the Residence Inn Hotel, 901 L Street, NW.  Surveillance from the hotel showed Defendant and his child's mother checking into the hotel on May 28, 2020.  Surveillance from the date of the firearm recovery shows Defendant carrying the backpack that was ultimately discovered to contain the firearm.  He's later seen providing that same backpack to his child's mother, who carried the backpack with her while heading towards the women's bathroom.  When seen later exiting the bathroom, Defendant's child's mother no longer had the backpack with her.

And after the July 17th incident for which he is presently charged, the Defendant persisted in his concerning pattern of conduct on November 11, 2022, resulting in the recovery of even more firearms, to include yet another rifle, in the vehicle that Defendant occupied.  While the Defendant is not presently charged for the June 2020 and November 2022 incidents, the Court can consider the conduct for purposes of determining whether Defendant should be detained in this matter.  *See United States v. Taylor*, 289 F. Supp. 3d 55, 69 (D.D.C. 2018).  In their totality, these incidents exhibit the Defendant's brazenness in continuing to surround himself with firearms notwithstanding his prohibited status.

The government's concern over this pattern of conduct is heightened by the lyrics and images glorifying gun violence and depicting firearms in Defendant's various music videos.  For instance, in a June 15, 2019 rap video named "Keltech," presumably referring to the firearm company "Kel-Tec," Defendant holds what appears to be a firearm, depicted below.



In a March 17, 2021 music video, called "Suicide Bombers," Defendant raps in a music video that contains multiple images of firearms and bottles of promethazine – see below for screenshots from the video.





In a June 7, 2021 music video, titled "Indictments," Defendant raps, "the whole world knows I got my name from smokin' n****s … I got the most murders uptown, this shit in double digits." In an October 24, 2021 music video, titled "Rich as Us," Defendant, whose rapper name is "Taliban Glizzy", raps: "when they mention murders, they're gonna mention us . . . switches on the glock but I ain't switching up."

### IV. Danger to the Community

The fourth factor, the nature and seriousness of the danger to any person or the community posed by Defendant's release, also weighs in favor of detention. Given the number of firearms Defendant has possessed thus far – as far as the government is aware – and the backdrop of the aforementioned music videos, the dangerousness that Defendant poses to the community cannot be understated. That he has persisted in possessing weapons designed to kill and maim evinces a level of dangerousness that cannot be mitigated by less restrictive conditions or combinations thereof. *See United States v. Gassaway*, No. 21-cv-550, 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021) ("This Court agrees with other courts in this district that unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public," and collecting cases.).

If released, Defendant will pose a flight risk considering that he has a residence in Miami, and given his flight from the police on November 11, 2022, after which he subsequently flew back to Miami. In light of all of the above, the Court can have no confidence that less restrictive conditions will assure the safety of the community and Defendant's return to Court.

## **CONCLUSION**

Given the assessment of all four relevant factors, no condition or combination of conditions can ensure the safety of the community. The Court should grant government's motion to detain the Defendant pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar 481052

By: */s/ Sitara Witanachchi*
SITARA WITANACHCHI
ANDY WANG
Assistant United States Attorneys
D.C. Bar Number 1023007 (Witanachchi)
D.C. Bar Number 1034325 (Wang)
United States Attorney's Office
601 D Street NW
Washington, D.C. 20530
Telephone: (202) 252-2420
Sitara.Witanachchi@usdoj.gov